**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.   Case No. 3:10-cr-23-J-32TEM

TONY DEVAUGHN NELSON
FRANK BERNARDINO

---

### OMNIBUS ORDER ON PENDING MOTIONS

This is a post-<u>Skilling</u> prosecution involving alleged public corruption. This case came before the Court on October 26, 2010 for a hearing on all pending motions. In issuing this Order, the Court incorporates by reference the entire record of that hearing, during which the parties, over the course of more than four hours, fully argued their positions.[1] Now, with benefit of the briefing and oral argument, the Court has carefully considered these matters and issues the following decisions.[2]

---

[1] The defendants were each permitted to adopt the motions filed by the other defendant to avoid repetitive filings and arguments. While cognizant that not all the issues raised were applicable to both defendants, to the extent they are, these rulings apply equally to both of them.

[2] As a point of clarification for the record, the Court advises the parties that when the government originally sought authorization to conduct the wiretap which preceded the filing of the indictment in this case, the sealed wiretap application case (3:08-mc-5) was randomly assigned to the undersigned. Out of an abundance of caution, I recused myself because at that time the scope of the investigation was unclear. The sealed file was reassigned (and is currently assigned) to the Honorable Virginia M. Hernandez-Covington who issued the Orders approving the wiretap. However, once the indictments against Nelson/Bernardino and Lance William Young (Case No. 3:10-cr-30-J-32MCR) were returned and randomly assigned to me (Nelson/Bernardino was first assigned to Judge Marcia Morales Howard but she recused herself), it became clear that there was no basis to recuse myself from either of those cases. Moreover, Judge Covington, now presiding in the Tampa Division, has authorized me to unseal the documents in the sealed wiretap file as necessary and appropriate.

**1.     Motions to Dismiss the Indictment Based on Defects** (**Docs. 40, 58, and supplemented by Doc. 119); Responses (Docs. 45, 82)**

Rule 12(b)(3)(B) permits the Court to dismiss a criminal indictment on the ground of "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(B).[3] "[T]he sufficiency of a criminal indictment is determined from its face." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations and quotations omitted). "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." Id. (citations and quotations omitted). "There is no summary judgment procedure in criminal cases[,]" United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992), and "[i]t is well-settled that a court may not dismiss an indictment on a determination of facts that should have been developed at trial." Sharpe, 438 F.3d at 1263 (citations and quotations omitted).

Defendants suggest that where the facts are essentially undisputed, the law permits the Court to conduct an evidentiary hearing and to then dismiss an indictment if it is determined that the elements cannot be sufficiently shown. See Motion to Dismiss, Doc. 58 at 27, n.38, citing United States v. Brown, 925 F.2d 1301, 1304 (10th Cir. 1991). Here, however, the United States "does not agree with the factual representations . . . put forward in defendant's motion" (Response, Doc. 82 at 1) and even if it did agree, the Eleventh Circuit would be unlikely to countenance the holding of an evidentiary hearing to explore such

---

[3]Rule 12(b)(3)(B) further explains that such motion must be made before trial, except that "at any time while the case is pending, the court may hear a claim that the indictment . . . fails . . . to state an offense." Thus, if there are further changes in the law, some of these legal issues could be revisited.

issues. See Critzer, 951 F.2d at 308 (reversing dismissal of indictment where district court, at the government's own implied invitation, reviewed facts proffered by the government to determine case insufficiently pled); see also, United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (joining three other circuits in rejecting view that extrinsic evidence could be considered in evaluating motion to dismiss an indictment). Thus, in accordance with Eleventh Circuit precedent, the Court will evaluate the motion to dismiss by looking only to the face of the indictment to determine whether it "contain[s] the elements of the offense intended to be charged, and sufficiently apprise[s] the defendant[s] of what [they] must be prepared to meet." Sharpe, 438 F.3d at 1263 (citation and quotation omitted).

### A.    Whether honest services is properly pled, post-Skilling

Defendants claim the indictment is defective in that the honest services charges fail to allege a "quid pro quo," which defendants claim is a required element of the charge pursuant to the Supreme Court's recent decision in Skilling v. United States, 130 S. Ct. 2896 (2010).[4] A defect in the pleading of the honest services charges would affect count 1 (the conspiracy charge), at least in part; counts 2-13 (the honest services mail fraud charges); counts 14-24 (the money laundering charges which allege the honest services mail fraud proceeds were laundered); and counts 37-43 (additional honest services mail fraud charges

---

[4]Defendants also contend that the government's theory of prosecution changed significantly from the investigative stages to the indictment because of the anticipated ruling from the Supreme Court in Skilling, suggesting to defendants that the government's investment in the case prompted it to pursue this prosecution even though (in the defendants' view) the law no longer supported it. However, a motion to dismiss requires the Court to examine the sufficiency of the indictment before it, not the evolution of the investigation and prosecutorial decision-making leading to the indictment, and the Court therefore declines to consider any pre-indictment history in ruling on this motion.

as to Nelson only).

In Skilling, the Supreme Court considered whether Jeffrey Skilling, the former Enron executive, could be properly convicted of conspiracy to commit wire fraud where the indictment charged him with "depriv[ing] Enron and its shareholders of the intangible right of his honest services." 130 S. Ct. at 2908. The Supreme Court examined 18 U.S.C. § 1346, the honest services statute underlying the wire fraud conspiracy charge, and held that the statute was too vague if it were construed as extending any further than schemes to defraud involving bribes and kickbacks. Skilling, 130 S. Ct. at 2907. Skilling's conviction on the conspiracy charge was therefore reversed because, although the government charged Skilling with defrauding Enron shareholders by misrepresenting the company's financial health to artificially inflate the stock price (resulting in an $89 million profit to Skilling), the government did not charge Skilling with accepting or soliciting a bribe or kickback in exchange for making the misrepresentations. Id. at 2934.

In holding that the honest services mail fraud statute, 18 U.S.C. § 1346, "criminalizes only the bribe-and-kickback core of the pre-McNally case law" (referencing McNally v. United States, 483 U.S. 350 (1987)), the Supreme Court explained that the boundaries of the bribery and kickback schemes prohibited could "draw[ ] content not only from the pre-McNally case law, but also from federal statutes proscribing-and defining- similar crimes." Skilling, 130 S. Ct. at 2931, 2933. As further explanation, the Supreme Court cited to three recent Circuit Court decisions which examined honest services bribery schemes by looking to federal bribery statutes. Id. at 2934 (citing United States v. Ganim, 510 F.3d 134, 147-49 (2d Cir. 2007); United States v. Whitfield, 590 F.3d 325, 352-53 (5th Cir. 2009); United

4

States v. Kemp, 500 F.3d 257, 281-86 (3d Cir. 2007)).

Defendants argue that Skilling's reference to Ganim, Whitfield, Kemp and various federal bribery and kickback statutes demonstrates that the Supreme Court requires a quid pro quo as a necessary element of an honest services bribery scheme. The Court is not persuaded. First, the Supreme Court's Skilling decision does not purport to define bribery and does not mention the words "quid pro quo." Second, while Ganim, Whitfield and Kemp discussed the requirement of a quid pro quo in the context of honest services fraud bribery schemes, a close reading of the decisions reveals that those courts did not require any specific action to be taken to form the "quo;" rather, they found the bribery scheme was complete if the government could demonstrate an exchange of a benefit to the official "for his promise to perform official acts or to perform such acts as the opportunities arose." Ganim, 510 F.3d at 142. See also, Whitfield, 590 F.3d at 352-53 (holding that the law only required the government to "prove the specific intent to give or receive something of value in exchange for an official act to be performed sometime in the future," with no requirement that the particular act be identified at the time of the payment) (citations omitted); Kemp, 500 F.3d at 282 (explaining that a quid pro quo arrangement can be demonstrated where payments are made "with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf") (citations omitted). Third, without express direction from the Supreme Court, even if any of these decisions required a quid pro quo, this Court would be unlikely to follow their guidance as to the required elements of a bribery charge because the Eleventh Circuit recently examined a bribery scheme under 18 U.S.C. § 666 and, relying on the plain

5

language of the statute, expressly held that a quid pro quo was not a required element of the charge. See United States v. McNair, 605 F.3d 1152, 1188 (11th Cir. 2010).[5]  While McNair predated Skilling, because Skilling did not define bribery or express any requirement of a quid pro quo in a bribery scheme, this Court is bound by the Eleventh Circuit's decision in McNair as to the required elements of a bribery scheme, at least in the context of a § 666 bribery charge.[6]  At this stage, therefore, the Court is not prepared to find that an honest services mail fraud charge alleging a bribery scheme requires identifying a quid pro quo as an element of the offense.[7]

However, even if the Supreme Court or the Eleventh Circuit did require proof of a quid pro quo in an honest services bribery scheme, the charges as contained in the indictment sufficiently allege the "quid" of monies paid in return for a "quo." See Indictment, p. 5, ¶ C.2 (" . . . in return for being influenced in the performance of [Nelson's] official duties"); p. 7, ¶ D.1 (" . . . in order for Nelson to be corruptly influenced in the performance of his official duties as the then-sitting Chairman of the Jaxport Board of Directors"); p. 7, ¶ D.2 (" . . . in

---

[5]In McNair, the Eleventh Circuit was satisfied that payment to County Commissioner McNair could constitute a bribe because, even though his official responsibilities were limited and the entire Board was required to vote on expenses, evidence at trial revealed McNair exercised influence over the entire Board.  605 F.3d at 1168-69.

[6]Defendant recently filed a petition for writ of certiorari in McNair. S. Ct. Docket No. 10-533, 2010 WL 4163763 (appellate petition), filed October 18, 2010.

[7] In McNair, the Eleventh Circuit noted that some confusion results by the differing uses of the term, "quid pro quo," which the Court announced should be reserved for a specific payment for a specific official act (a "this" for "that" activity), and not for an ongoing course of conduct ("these" for "these" types of activities). See McNair, 605 F.3d at 1190 (discussing Ganim, 510 F.3d at 148).

order for Nelson to be corruptly influenced in the performance of his official duties as a Jaxport Board Member with regards to Young's business, SSI, with Jaxport").[8]  While defendants challenge the sufficiency of the evidence to support these allegations, in the context of a motion to dismiss the indictment,ced Court limits its consideration to the face of the indictment, finding that the elements of the honest services mail fraud charges are sufficiently alleged under the law even post-Skilling.  Sharpe, 438 F.3d at 1263.[9]

### B. Whether the money laundering counts are improperly duplicative of mail fraud

Defendants alternatively contend that the money laundering charges (counts 14-24 and the portion of count 1 alleging conspiracy to commit money laundering) cannot stand because the deposits allegedly comprising the laundered money are the same funds whose deposit was required to complete the mail fraud allegations.  Pursuant to  18 U.S.C. § 1956(a)(1)(B)(i), and as charged in the indictment, defendants will have violated the money laundering statute if they knowingly and willfully conducted or tried to conduct financial transactions affecting interstate commerce which involved the proceeds of mail fraud and bribery as charged in the indictment, with the intent to conceal or disguise the nature, location, source, ownership or control of the proceeds.  Eleventh Circuit Pattern Jury

---

[8]The indictment additionally alleges that "Nelson as Vice-Chairman of the Jaxport Board of Directors, voted to approve the award of a contract to perform dredging services to create a turning basin . . ." Doc. 1, p. 13, ¶D.34.  However, because defendants have moved to strike this reference from the indictment (and the government's response is not yet due), the Court has elected to disregard this very specific allegation of a quid pro quo for purposes of ruling on the motion to dismiss the honest services charges.

[9]Of course, if asked, the Court will review the sufficiency of the evidence under Rule 29 at the close of the government's case.

Instructions, Offense Instruction 74.2 (2010); Indictment (Doc. 1) at p.19. As explained by the Eleventh Circuit:

> Money laundering is an offense to be punished separately from an underlying criminal offense. United States v. Edgmon, 952 F.2d 1206, 1213 (10th Cir. 1991) (finding that Congress intended money laundering and other specified unlawful activity to be distinct offenses punished separately). <u>The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur.</u> United States v. Kennedy, 64 F.3d 1465, 1477-78 (10th Cir. 1995).

United States v. Christo, 129 F.3d 578, 579-80 (11th Cir. 1997) (emphasis added).

Defendants argue that in this indictment, the money laundering charges are not sustainable because the mail fraud bribery scheme was not complete until the proceeds of that scheme had been deposited. As support, defendants rely on United States v. Santos, in which the Supreme Court made a distinction between "profits" and "receipts" in the context of a money laundering charge coupled with, inter alia, an illegal gambling charge. 553 U.S. 507 (2008). The Santos decision failed to secure more than a plurality and, as explained by the Eleventh Circuit, the decision "has limited precedential value" and in fact, the Eleventh Circuit has viewed the decision as holding "at most" "that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956 . . ." United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009). Because the funds Demarest was alleged to have laundered likewise were not the "gross receipts of an illegal gambling operation," his conviction for laundering the proceeds of an illegal drug trafficking scheme was upheld. Id. Defendants here argue that Demarest was wrongly decided. However, not only is Demarest still controlling here, but the Eleventh Circuit has continued to rely on its authority, including in cases (such as here) where fraud charges are coupled with money laundering charges

8

in the same indictment. See, e.g., United States v. Jennings, 599 F.3d 1241, 1252 (11th Cir. 2010) (mail and wire fraud with money laundering); United States v. Hein, No. 07-10718, 2010 WL 3549952, *4 (11th Cir. Sept. 14, 2010) (mail and wire fraud with money laundering); United States v. Puerto, No. 07-14097, 2010 WL 3191765, *4, n.3 (11th Cir. Aug. 12, 2010) (bank and wire fraud with money laundering).  In a Notice of Supplemental Authority filed today (Doc. 119), Nelson alerts the Court to a recent decision of the Fifth Circuit, Garland v. Roy, 615 F.3d 391 (5th Cir. 2010), which states that the Eleventh Circuit's decision in Demarest is "mistaken" (615 F.3d at 403).  Of course, this Court remains bound by Demarest.  However, the Fifth Circuit's decision demonstrates that the issue decided in Demarest has split the Circuits and remains unsettled.  Nevertheless, based on Eleventh Circuit precedent, the Court finds the money laundering charges are sufficiently pled in this indictment to survive a motion to dismiss.

**C.     Whether bribery prosecutions under § 666 require a quid pro quo**

Defendants assert a separate challenge to counts 25-36 alleging bribery under § 666(a)(1)(B), and the portion of count 1 alleging conspiracy to commit bribery, arguing that § 666 requires a quid pro quo.  "Section 666 proscribes theft and bribery in connection with programs of local governments receiving federal funds." McNair, 605 F.3d at 1185.  As explained above, McNair "expressly hold[s] there is no requirement in § 666(a)(1)(B) or (a)(2) that the government allege or prove an intent that a specific payment was solicited, received, or given in exchange for a specific official act, termed a quid pro quo." Id. at 1188.  McNair controls the Court's review of the counts 25-36 bribery charges, which the Court finds are

Case 3:10-cr-00023-TJC-JBT Document 120 Filed 11/08/10 Page 10 of 18 PageID 1017

sufficiently pled to withstand a motion to dismiss.[10]

### D. Other challenges to the sufficiency of the indictment

Defendants' other challenges to the sufficiency of the indictment are mired in the facts of the case; the Court therefore summarily denies those challenges as a basis for dismissal.

## 2. Motions to Suppress (Docs. 62, 111, as supplemented, Doc. 113); Responses (Docs. 84, 112[11])

Defendant Nelson has moved on several grounds to suppress wiretap evidence as well as evidence seized pursuant to three search warrants. His most serious challenge is that the affidavit filed in support of the original wiretap application did not contain sufficient probable cause to support Judge Covington's decision to issue the wiretap authorization. As explained by the Eleventh Circuit:

> An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant. The issuing [judge] is to make a practical, common-sense decision about whether the totality of the circumstances indicate that there is probable cause that the sought-for evidence will be obtained. The standard for [the Court's] review of the [judge's] determination is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed. . . . [T]he practical nature of the [judge's] decision justifies great deference upon review and calls for upholding the [judge's] findings even in marginal or doubtful cases.

United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990) (quotations and citations omitted).

---

[10]There is one exception. Count 36 states that the issuer of the check is "L.W. Young Consulting Group, LLC, Orlando, Florida." It is unclear how defendant Bernardino or his company are involved with this transaction. The Court defers ruling on Bernardino's motion to dismiss this count.

[11]Defendant Nelson's motion to strike portions of this response (Doc. 103) is denied.

Defendant argues that the affidavit suffers from the inclusion of false statements and misrepresentations and the omission of material facts, including that the confidential source and confidential informant were both biased witnesses. Defendant also claims that the affiant's (who is an FBI agent) repeated use of the term, "I believe" to preface her statements reveals that her affidavit is based on opinion, not facts. Defendant further contends that any information suggesting criminal activity was stale.

While the Court agrees that the affiant's repeated use of "I believe" is not the best practice, in the full context of her 56 page original affidavit and 35 page extension affidavit, which contain information and reference to source materials supporting the affiant's statements, the "I believes" were just a device the agent used, and it did not affect the probable cause determination.[12] The Court has considered defendant's other challenges to the probable cause determination and, having reviewed the affidavits in their totality, finds defendant has failed to meet the standard necessary to show that probable cause was lacking. See Nixon, 918 F.2d at 900. Neither has defendant met the high threshold necessary to secure further review under Franks v. Delaware, 438 U.S. 154 (1978).

As to defendant's other challenges, the Court finds defendant's objections regarding the minimization of the wiretap, the availability of other investigatory means, the involvement of the phone with the illegal activities, and the timeliness of the extension request to be without merit. Additionally, that the government's legal and factual predicates changed between the time of the wiretap and search warrant applications and the return of the

---

[12]The same is true for the "I believes" in the search warrant affidavits.

indictment does not affect the probable cause that was present at the time the wiretap authorization and search warrants issued. United States v. Scaglione, 446 F.2d 182, 186 (5th Cir. 1971).[13]  For these reasons, the motions to suppress are denied.[14]

**3.    Discovery motions**

    **A.    Early Brady/Giglio/Kyles disclosure, Discovery generally (Docs. 53, 63); Response (Doc. 87)**

At arraignment, defendants accepted discovery pursuant to the Court's Standing Order (see Docs. 35, 37, 38).  For most cases, the Court's Standing Order results in the production of discovery in sufficient time so as not to create prejudice; moreover, the government often voluntarily produces discovery earlier than required by the Standing Order. Some cases, though, require more.  The government does not contest this point, but neither does it want to set precedent by agreeing to disclosure outside the Standing Order. Additionally, the government points out it has already produced substantial discovery to defendants, including boxes of documents, the wiretap applications, the wiretap recordings, all records seized from the three searches, and various other items.

Defendants have requested a broad range of discovery outside the requirements of the Standing Order.  The Court finds the complexity of the case and the absence of prejudice

---

[13]Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

[14]The government argued that Nelson did not have standing to challenge certain of the searches and that Bernardino had no standing to move for suppression of any of this evidence.  Bernardino has acknowledged his lack of standing.  The Court assumes without deciding that Nelson had standing to challenge all of the searches.

to the government warrants the early production of all <u>Brady</u>, <u>Giglio</u> and <u>Kyles</u> material and any Rule 404(b) material, which the Court orders the government to produce no later than **December 1, 2010**. In all other respects (and except as addressed below in the discussion of other motions) the discovery motions (Docs. 53 & 63) are denied, though the Court strongly encourages the government to continue to provide generous and timely discovery to defendants.

### B. Motions for Bills of Particulars (Docs. 54, 64); Response (Doc. 89)

Upon review, the Motions for Bills of Particulars are denied.

### C. Motion to Produce Handwritten Notes (Doc. 65); Response (Doc. 88)

These motions generated a fair amount of briefing and discussion by the parties. Defendant Nelson made pre-indictment statements to government agents on five occasions; defendant Bernardino, on one occasion. The FBI prepared two summaries of Nelson's interviews (one summary of the first four and a summary of the fifth) and a summary of Bernardino's statement and the government has already provided defendants with the summaries (the "302" summaries). During each of these interviews, agents took handwritten notes which the government has maintained at the Court's direction (see Doc. 47). Defendants want the notes, claiming that they would represent the most accurate and authentic version of their statements. As support for their request, defendants cite, among other rules, Rule 16(a)(1)(B)(ii) of the Federal Rules of Criminal Procedure, which requires the government to disclose upon request:

> the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a

> person the defendant knew was a government agent.

Fed. R. Crim. P. 16(a)(1)(B)(ii). Some courts view this provision, which was added to Rule 16 in 1999, as requiring the government to produce handwritten notes regarding a defendant's statement, even if summary reports have already been provided. See, e.g., United States v. Ferguson, 478 F. Supp. 2d 220, 235-238 (D. Conn. 2007); United States v. Stein, 424 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2006); United States v. Vallee, 380 F. Supp. 2d 11 (D. Mass. 2005). Other courts opine that, while the plain language of the provision would seem to support production, the purpose of the amendment was not intended to create such a radical change from prior practice. See United States v. Nguyen, 456 F. Supp. 2d 1366 (N.D. Ga. 2006). Additionally, in United States v. Jordan, 316 F.3d 1215 (11th Cir. 2003), the Eleventh Circuit suggested that handwritten interview notes are not subject to discovery, although the discussion in Jordan was largely limited to the interviews of other witnesses and not, as here, the defendants themselves. Nonetheless, in Jordan, the Eleventh Circuit reiterated that Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." 316 F.3d at 1249, n.69 (quotation and citation omitted).

The government has not demonstrated or suggested any real prejudice that it will suffer if the Court orders production of the agents' handwritten notes of the interviews with defendants. At trial, the government will likely rely on statements allegedly made by the defendants to the FBI; therefore, defendants are entitled to the FBI agents' handwritten notes for cross-examination purposes. This is especially true regarding count 44 of the

indictment which alleges that defendant Nelson made false statements to the FBI during one of these interviews.

At the Court's direction, the government submitted the notes and the Court has reviewed them in camera (filed under seal as Doc. S-5). While the notes are largely captured by the 302s, the notes contain additional information not recited in the 302s and the Court finds the production of the notes is necessary in this case to protect defendants' rights to a fair trial. However, the government will be permitted to produce the notes with limited redactions if it chooses.

No later than **November 19, 2010**, the government shall submit to the Court under seal versions of the handwritten notes that highlight any material (such as an agent's mental impressions) that the government would propose be redacted from the version of the notes to be produced to defendants. Following the Court's review of any proposed redactions, the Court will order the government to produce the notes to defendants. If the government has no proposed redactions, it shall provide defendants with copies of the agents' handwritten notes no later than **November 19, 2010** and shall advise the Court that it has done so. In addition to providing the notes, the government should identify the authors of the notes.

**4.     Motion to Dismiss Based on Prosecutorial Misconduct/And to Compel (Doc. 68, supplemented by Doc. 105); Response (Doc. S-2)**

The Court has reviewed in camera the transcript of Mr. Delaney's grand jury testimony (filed under seal as Doc. S-3). The government's response to the motion to dismiss (filed under seal as Doc. S-2, but shared with counsel for Mr. Nelson) largely discloses the content of that testimony. The Court finds no basis to dismiss based on alleged prosecutorial

misconduct or grand jury abuse related to that testimony nor any basis to order production of Mr. Delaney's grand jury testimony which is otherwise protected by law. See Fed. R. Crim. P. Rule 6(e)(2).[15]  Both motions are therefore denied.

**5.    Motion to Sever (Doc. 67); Response (Doc. 86)**

On the grounds asserted, the motion to sever is denied.  However, defendant Bernardino argued that, depending on the Brady information he receives from the government, he could envision a situation where severance between the defendants is required due to a Bruton issue.  Any motion for severance based on Bruton must be filed no later than **December 14, 2010**.

**6.    Rulings Recap**

To assist the Clerk with the record, the Court has now ruled on the pending motions as follows:

- Defendants' Motions to Dismiss (Docs. 40 & 58) are **denied**.

- Defendants' Motions to Suppress (Docs. 62 & 111) are **denied**.

- Defendants' Motions for discovery and early Brady/Giglio/Kyles disclosure (Docs. 53 & 63) are **granted in part and denied in part** as explained above.

- Defendants' Motions for Bills of Particulars (Docs. 54 & 64) are **denied**.

- Defendants' Motion to Produce Handwritten Notes (Doc. 65) is **granted** as explained above.

- Defendant's Motion to Strike (Doc. 103) is **denied**.

---

[15]The Court might revisit the production of Mr. Delaney's grand jury testimony should the government seek to use it to cross-examine him at trial.

- Defendant's Motion to Dismiss Based on Prosecutorial Misconduct/And to Compel (Doc. 68, supplemented by Doc. 105) are **denied**.

- Defendant's Motion to Sever (Doc. 67) is **denied**.

- Defendant's Post-hearing Motion to Strike Indictment Reference (Doc. 114) remains under advisement pending the government's written response.

## 7. Remaining Matters

**A.** The government has advised the Court that it objects to the unsealing of the original wiretap application and Order authorizing the wiretap, as well as the wiretap extension application and Order authorizing the wiretap extension (Docs. S-1, S-2, S-13 and S-14 in Case No. 3:08-mc-5). Intervenor The Florida Times-Union may respond to these objections no later than **November 22, 2010**. No later than **December 6, 2010** the government shall provide the Court with further detail (to be submitted under seal if necessary) regarding the substance of its objections.

**B.** The Court still has under advisement the matter of the release of Exhibit B to defendant Nelson's motion to suppress and will wait to hear from counsel for Mr. Young (whose response is due today) before deciding whether to release that exhibit.

**C.** Any remaining pretrial motions should be filed as soon as possible but no later than **December 14, 2010**.

**D.** This case remains set for status **December 21, 2010 at 2:00 p.m.**, and a four week jury trial commencing **January 18, 2011 at 9:00 a.m.** The parties are reminded that requests for subpoenas of any kind should be submitted as early as possible in advance of trial.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of November, 2010.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

Mark B. Devereaux, Esq. (AUSA-Jax)
Mac D. Heavener, III, Esq. (Dep. Chief AUSA-Jax)
Curtis S. Fallgatter, Esq.
Nathan P. Diamond, Esq.
Jose Villalobos, Esq.
Timothy J. Conner, Esq.