**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                              Case No. 3:10-cr-23-J-32TEM

TONY DEVAUGHN NELSON
FRANK S. BERNARDINO

### ORDER

The government has charged defendants Tony Nelson and Frank Bernardino with thirty-six counts of criminal activity involving conspiracy, mail fraud, money laundering and bribery. These counts allege a public corruption scheme whereby Nelson, as a sitting member of the Jacksonville Port Authority, allegedly solicited and accepted (through Bernardino) bribe money in exchange for Nelson's influence in the performance of his official duties to benefit Subaqueous Services Inc., a company doing business with the Port. Nelson is also charged with one count of making a false statement in relation to that scheme.

The same indictment separately charges Nelson (but not Bernardino) with seven counts of mail fraud involving an alleged scheme to secure a particular contract for Subaqueous with the Port. In essence, these charges allege that in November 2005 Nelson, without the knowledge of certified minority subcontractor, Rham Construction, submitted a forged subcontracting bid to Subaqueous on behalf of Rham, which Subaqueous then included in its bid for a contract with the Port. The Port subsequently awarded Subaqueous

a contract[1] and Subaqueous (whose principal allegedly thought he was dealing with Rham, not Nelson), later made payments to Rham totaling $9,000, which were deposited in a bank account opened in Rham's name by Nelson.  Each count of the Rham mail fraud charges (counts thirty-seven through forty-three) represents another deposit into the Rham account.

Previously, defendants jointly moved to sever counts thirty-seven through forty-three from the remaining counts of the indictment, arguing that the two sets of charges were unrelated and would prejudice the defendants if tried together.  In an omnibus order on pending motions, the Court summarily denied the severance request, having been persuaded by the government's position in both its brief and at oral argument that the sets of counts were sufficiently related and that defendants would not be prejudiced by a trial of all forty-four counts together.  At the time, and in the context of the other quite difficult and voluminous issues the Court was addressing, this seemed correct.  All counts alleged that Nelson, a sitting Port board member, had allegedly engaged in illegal activities to take actions on behalf of Subaqueous, a company doing business with the Port.

Following the Court's ruling, however, defendant Nelson moved in limine to exclude much of the evidence the government intends to put forward to prove the Rham mail fraud charges and the parties have now filed a number of briefs and literally hundreds of pages of exhibits in their attempts to educate and persuade the Court as to the correctness of their respective positions on the nature of these charges and the admissibility of the evidence

---

[1] Whether the contract the Port awarded to Subaqueous was the same contract for which Subaqueous submitted the bid described in the indictment is an important and seriously disputed fact in the case.

2

related to them. See Docs. 176, 193, 196, 202, 221, 222, 223, 227, 234, 238. In reviewing these materials, the Court began to question the relationship between the Rham counts and the rest of the indictment and, at a hearing on April 20, 2011 (the record of which is incorporated by reference), the Court sua sponte raised with the parties the possibility of revisiting its decision to deny the motion to sever. Counsel for both defendants advised the Court that they remain in favor of severance (defendants Nelson and Bernardino have now reaffirmed that position in writing; see Doc. 257), and the government remains opposed. Nelson submitted documents during the hearing in support of his position and both sides filed additional materials following the hearing. See Docs. 250, 253, 254 and Minutes, Doc. 252.

The Court continues to agree with the government that the charges of this indictment are properly joined, thus complying with the dictates of Federal Rule of Criminal Procedure 8(a). See Fed.R.Crim.P. 8(a); United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002) (quoting Rule 8(a)). The question is whether they should nonetheless be severed pursuant to Rule 14.

Under Federal Rule of Criminal Procedure 14(a), "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." In Zafiro v. United States, 506 U.S. 534, 539 (1993), the Supreme Court held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

When determining if this standard has been met, "the district court must balance the prejudice that a defendant may suffer from a joint trial, against the public's interest in judicial economy and efficiency." United States v. Knowles, 66 F.3d 1146, 1158 (11th Cir. 1995) (quotation omitted).

Applying this standard, courts within the Eleventh Circuit which have granted severance have considered, among other factors, the complexity of the charges and the relationship between the counts of the indictment. See United States v. Sylvin, No. 09-20264-CR, 2010 WL 1641160, at *1-3 (S.D. Fla. Apr. 22, 2010); United States v. Paul, 150 F.R.D. 696, 698-700 (S.D. Fla. 1993).[2] Not only can a joint trial of complex issues risk confusing the jury and thus compromising the reliability of the jury's verdict, but such a trial can also be detrimental to judicial economy. With separate charges involving complex proof, the court may spend a great deal of time on limiting instructions and, due to the confusing nature of the case, there may be a greater risk of a hung jury and resulting new trial. See Sylvin, 2010 WL 2010 WL 1641160, at *3; Paul, 150 F.R.D. at 700. Moreover, when the government's proof involves little evidentiary overlap, severance will not greatly impair judicial efficiency. Paul, 150 F.R.D. at 700.

Upon reconsideration, the Court finds the balance of these factors weighs in favor of severance. Anyone attending the April 20, 2011 hearing could have little doubt that the proof on the Rham counts will be complex, confusing, and hotly contested. The parties' post-hearing submissions continue to highlight these truths. See Docs. 250, 253, 254. Defendant

---

[2]In citing these cases, the Court is aware of numerous other Eleventh Circuit and district court cases (including many of my own) denying severance on their facts.

Nelson has serious arguments regarding whether the contract the Port awarded to Subaqueous is the same contract alleged in the indictment.[3] While the Court is not prepared to further address this issue now, the questions raised are sufficiently involved that these counts should not be tried with the remainder of the case.[4]

Additionally, counts one through thirty-six and forty-four together allege a scheme of public corruption that began in mid-2006. The Rham counts allege that Nelson prepared fraudulent documents in 2005.[5] The government did not allege that the events forming the Rham counts were part of the larger conspiracy and its arguments as to why the entirety of evidence about the Rham counts would be necessary to "tell the story" of the other charges are unconvincing. Besides, it could be confusing for the jury to try to understand how Lance Young, the owner of Subaqueous, is a victim of the fraud in the Rham counts but is a co-conspirator of Nelson and Bernardino in the alleged public corruption scheme. Moreover, the Rham count activities have nothing to do with Bernardino, the alleged co-conspirator of Young and Nelson in counts one through thirty-six; a joint trial of all counts could further

---

[3] There is also reason to believe that the government's own understanding of the Rham counts is continuing to evolve. The government's original exhibit list, filed in January, 2011, contained only a passing reference to the Port's "1191" contract, which the government now says is the operative agreement. It was only on April 15, 2011 as the controversy over the Rham counts escalated that the government, in its amended exhibit list, has added the entire 1191 contract file as exhibits.

[4] Moreover, these defendants were indicted over fifteen months ago and the trial has been continued once already. Many resources have now been expended to prepare for trial beginning May 2, 2011. Further delay in trying the principal counts of the indictment to attempt to resolve the issues with the Rham counts is unwarranted.

[5] The Court recognizes that counts thirty-seven through forty-three allege that, as part of the scheme, Nelson received payments that were mailed in March and April 2006.

compromise the jury's ability to keep these charges, and the defendants' roles therein, straight.

This is an important case involving serious allegations of public corruption as presented by counts one through thirty-six and forty-four and the jury will need to pay close attention to complex issues over a period of several weeks to decide those charges. To require the jury to additionally spend significant time wading through the conflicting and contradictory evidence regarding the separate and unrelated Rham mail fraud charges involving only one of the two defendants would not contribute to judicial economy and would unduly prejudice both defendant Nelson and defendant Bernardino (who would be required to endure trial on the Rham counts in which he is not involved).

The Supreme Court says that "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro, 506 U.S. at 541; see also Knowles, 66 F.3d at 1158 (same). Doing my best to exercise that "sound discretion," I conclude that counts thirty-seven through forty-three should be severed. Accordingly, it is hereby

**ORDERED:**

1. The Court's November 8, 2010 Order (Doc. 120) is **VACATED** to the extent that it denied the motion for severance (but only to that extent) and the defendants' motion for severance (Doc. 67) is **GRANTED**. The trial on counts one through thirty-six and forty-four will proceed with jury selection as scheduled on May 2, 2011.[6] Counts thirty-seven

---

[6]At the April 20, 2011 hearing, the government expressed its preference to try the Rham counts first in the event the Court ordered a severance. However, the government's reasons

through forty-three will be set for trial by separate Order following the conclusion of the trial on the other counts.[7]

2.  Defendants' Motions in Limine related to the Rham Counts (Docs. 176 Part A, 193, 196, 234) are **GRANTED** to the extent that the government may not refer to or offer evidence regarding the Rham counts in the first trial without a proffer being made outside the presence of the jury and a ruling by the Court.

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of April, 2011.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

Mark B. Devereaux, Esq. (AUSA-Jax)
Mac D. Heavener, III, Esq. (Dep. Chief AUSA-Jax)
Curtis S. Fallgatter, Esq.
Nathan P. Diamond, Esq.
Jose Villalobos, Esq.
Tony Devaughn Nelson
Frank S. Bernardino

---

are entirely unpersuasive.

[7]All computable time under the Speedy Trial Act between May 2, 2011 and the time of trial on the severed counts is excludable under 18 U.S.C. § 3161(h)(1)(B). The continuance of the trial on those counts is further supported by the interests of justice which outweigh the interests of the public and defendant in a speedy trial. See 18 U.S.C. § 3161(h)(7); Sylvin, 2010 WL 1641160, at *3.