**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TONY DEVAUGHN NELSON,

    Petitioner,

vs.            Case No. 3:16-cv-1434-J-32JBT
                   3:10-cr-23-J-32JBT

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

Tony Devaughn Nelson, former Chair of the Board of the Jacksonville Port Authority, was convicted by a jury on May 20, 2011 of eleven counts of honest services mail fraud in violation of 18 U.S.C. §§ 1341, 1346 and 2; twelve counts of bribery concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2; eleven counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; one count of conspiracy to commit those violations in violation of 18 U.S.C. § 371; and one false statement count in violation of 18 U.S.C. § 1001.[1] Crim. Doc. 306.[2] The theory of the government's case at trial was that in exchange

---

[1]The jury found Nelson not guilty of one honest services mail fraud count. The Court had severed seven counts of mail fraud involving a separate alleged scheme that was charged in the indictment. The government dismissed those counts following Nelson's conviction on the other charges.

[2]Citations to the record in the underlying criminal case, <u>United States v. Tony Devaughn Nelson</u>, No. 3:10-cr-23-J-32JBT, will be denoted, "Crim. Doc. __." Citations to the record in the civil petition, No. 3:16-cv-1434-J-32JBT, will be denoted,

for payments from a Jacksonville Port Authority contractor (Lance Young), Nelson used his position as a member of the Port's Board to influence Port staff to make decisions that favored Young and his company. The Court sentenced Nelson to a term of forty months imprisonment, followed by one year of supervised release, ordered him to pay a monetary assessment, and entered subsequent forfeiture orders. Crim. Docs. 408, 413, 450. The Eleventh Circuit affirmed, with one Judge dissenting and one Judge concurring. United States v. Nelson, 712 F.3d 498 (11th Cir. 2013). Nelson's petition for a writ of certiorari to the United States Supreme Court was denied. Nelson has completed all components of his sentence.[3]

In 2016, the United States Supreme Court issued its unanimous decision in McDonnell v. United States, 136 S. Ct. 2355 (2016), holding that the Virginia Governor's acts of setting up a meeting, hosting an event, or calling another official related to a pending matter in exchange for money was not sufficient to run afoul of the honest services fraud statute, absent evidence that the Governor made a decision or took an action related to the matter, or agreed to do so. Nelson is now before the

---

"Civ. Doc. __."

[3]Nelson's petition stated that "he remains impaired and handicapped by the financial obligations of his judgment" (Civ. Doc. 1 at ¶ 129), but it appears that all monetary aspects of his judgment have been satisfied. See Crim. Docs. 450, 457 (final judgment of forfeiture and notice of satisfaction of forfeiture money judgment). Although he was ordered to pay a special assessment of $3,600.00, of which he paid $814.64, special assessment debts expire after five years so, according to the Court's finance department, Nelson does not owe any balance.

Court on a petition for writ of error coram nobis, arguing that McDonnell undermines the government's theory of prosecution in his case, requiring that his convictions be set aside (Crim. Doc. 459; Civ. Doc. 1). The government responded in opposition (Civ. Doc. 11), Nelson replied (Civ. Doc. 14), and the parties filed supplemental briefs and notices of supplemental authority (Civ. Docs. 17, 20, 23, 26).[4] The Court held oral argument on the petition, the record of which is incorporated by reference. Nelson filed a further supplement after the hearing (Civ. Doc. 31).

The Court remembers Mr. Nelson's case well. Faced with a changing legal landscape post-Skilling[5] and numerous and persistent arguments from Nelson's able counsel that the prosecution was defective, the Court confronted and decided scores of legal issues pretrial, at trial and post-trial. Following Nelson's conviction and sentencing in this Court, the Eleventh Circuit affirmed on direct appeal, though Judge Hill dissented, opining that Nelson committed no crime. Then the Supreme Court decided McDonnell, further narrowing the government's prosecutorial reach in public corruption cases under 18 U.S.C. § 201.

---

[4] The Northeast Chapter of the Florida Association of Criminal Defense Lawyers filed an amicus brief expressing its support for Nelson's position. Civ. Doc. 6.

[5] Five months after Nelson was indicted, the Supreme Court issued its decision in Skilling v. United States, 130 S. Ct. 2896 (2010), holding that only "bribes or kickbacks" would support an honest-services fraud prosecution.

So, when Nelson, through the same counsel who has fought so relentlessly for him throughout this case, filed this petition for a writ of coram nobis seeking to have Nelson's convictions vacated, I felt duty bound to give his long closed case another hard look. I did so even knowing that coram nobis relief is very rarely granted and that Nelson was neither charged nor convicted under § 201, which was the statute at issue in McDonnell.

I have now completed a comprehensive review of the voluminous briefs and pertinent portions of the record, and have held oral argument on the petition. Nelson's effort to import the McDonnell holding to his case fails. I find no fundamental defect in Nelson's case that would entitle him to the extraordinary remedy of coram nobis relief.

**I.     Standard of Review**

"A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." Chaidez v. United States, 568 U.S. 342, 345 n.1 (2013) (citation omitted). "Federal courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a)." United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000). But "courts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier." Id. at 1204. Coram nobis

4

relief is not available as a means to have the trial court reconsider its rulings. Moody v. United States, 874 F.2d 1575, 1577 (11th Cir. 1989). Rather, it is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." Mills, 221 F.3d at 1203. Thus, "[a] court's jurisdiction over coram nobis petitions is limited to the review of errors 'of the most fundamental character.'" Id. (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)). The fundamental character of the error must be such that it has "'rendered the proceeding itself irregular and invalid.'" United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) (quoting United States v. Morgan, 346 U.S. 502, 509 n.15 (1954)). Lack of subject matter jurisdiction is an example of an error of the most fundamental character for which coram nobis relief might be available. Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000).[6] But such relief is extremely limited– it appears the Eleventh Circuit has found coram nobis relief available only once in modern times. See Peter, 310 F.3d at 712-15 (holding coram nobis relief warranted where defendant pled guilty and was convicted based solely on conduct that was not a crime and district court therefore had lacked subject matter jurisdiction over his case).

---

[6]Extrapolating from a recent Eleventh Circuit case about the right to habeas relief, the government contends the Eleventh Circuit may no longer even recognize the right to coram nobis relief. See Civ. Doc. 11 at 12 n.13 (discussing McCarthan v. Director of Goodwill Industries-Suncoast, Inc., 851 F.3d 1076 (11th Cir.), cert. denied, 138 S. Ct. 502 (2017)). Because the Court finds coram nobis relief is not available to Mr. Nelson, it need not reach this issue.

## II.     Discussion

The government contends Nelson has failed to identify an error of such "fundamental character" as to warrant even considering whether the Supreme Court's McDonnell decision compels granting coram nobis relief. The Court agrees. To the extent Nelson tries to present a challenge to the Court's subject matter jurisdiction (by arguing that the jury found him guilty based on acts that are not criminal under McDonnell), that effort falls short. Unlike in Peter, 310 F.3d 709, where the conviction rested on stipulated facts that presented no crime, the evidence adduced at Nelson's trial, together with the jury instructions, authorized the jury to convict him of the crimes charged in the indictment.

Nelson's related argument that the indictment failed to charge the essential elements of bribery, thereby depriving the court of subject matter jurisdiction, is likewise unavailing as an avenue to coram nobis review. See Alikhani, 200 F.3d at 734-35 (holding that "failure of an indictment to state an offense" does not divest the court of subject matter jurisdiction and is therefore a non-jurisdictional statutory challenge). Nor are Nelson's jury instruction challenges sufficient to invoke coram nobis jurisdiction. See, e.g., McDonnell, 136 S. Ct. at 2375 (explaining that jury instruction challenges are subject to harmless error review); United States v. Spellissy, 710 F. App'x 392, 395 (11th Cir. 2017) (affirming dismissal of coram nobis petition because jury instruction error is not "fundamental error" making proceeding

"irregular and invalid" under Alikhani). Finally, Nelson's claim that the principles of federalism recognized in McDonnell rendered him immune from prosecution is a legal argument he raised– and the Court rejected– during the course of his criminal proceedings.[7] Thus, it does not present a basis for coram nobis review.

Thus, Nelson has not identified an error of such fundamental character as to warrant consideration of his coram nobis petition.[8] However, even if he had, for the reasons explained below, the Court would still find Nelson's petition was due to be denied.

Nelson argues that his prosecution was defective because the jury was permitted to convict him without finding that he had taken any "official acts" as required by McDonnell. Even assuming this was an accurate portrayal of the result, it takes McDonnell too far. Governor McDonnell was charged with federal funds bribery under 18 U.S.C. § 201, which, as the Supreme Court clarified, requires proof that the public official has undertaken an official act either by making a decision or taking an action on a pending governmental question, matter, cause, suit, proceeding,

---

[7]See, e.g., Crim Doc. 401 at 9-10 (motion raising federalism concerns); Crim. Doc. 407 (minute entry ruling on motions after argument).

[8]The government contends Nelson is also required to show that he suffers under a continuing disability from his felony convictions. In light of Peter, 310 F.3d at 712, it is not clear that such a showing is required. In any event, even though his sentence has been served, the Court finds Nelson suffers under a continuing disability from his felony convictions.

or controversy; by using the official's position to pressure another official to perform an official act; or by agreeing to do so. McDonnell, 136 S. Ct. at 2370-71. Because the trial court's instructions led the jury to believe that McDonnell could be found guilty if he merely set up a meeting, hosted an event, or called an official (or agreed to do so)– actions which many "conscientious public officials" perform– the instructions swept too broadly. Id. at 2372-73.

Nelson argues that a violation of § 666 (the bribery statute under which he was convicted) should likewise require proof of his having undertaken an official act, contending that the "official duties" referenced in the indictment should have the same meaning ascribed to the term "official act" in § 201. But, as explained in United States v. McNair, 605 F.3d 1152, 1191 (11th Cir. 2010), cert. denied, 131 S. Ct. 1600 (2011), these two statutes are not the same:

> Although § 201(b) requires that a bribe be given or received to influence an "official act" or "in return for" an "official act," § 666 sweeps more broadly than either § 201(b) or (c). Section 666 requires only that money be given with intent to influence or reward a government agent "in connection with any business, transaction, or series of transactions." 18 U.S.C. § 666(a)(1)(B) & (a)(2). Section 666 does not say "official act" but says "any business, transaction, or series of transactions." Id.

Id., (emphasis added). Consistent with McNair, the Nelson jury was instructed that to find Nelson guilty of bribery under § 666, it had to find, inter alia, that the government proved beyond a reasonable doubt that, in return for the money Nelson

8

accepted or demanded or agreed to accept, he "intended . . . to be influenced or rewarded for a transaction or series of transactions of the Jacksonville Port Authority involving something worth $5,000 or more." Jury Instr. No. 16 (Crim. Doc. 333 at 27-28). In light of McNair's unequivocal language, the Court is unpersuaded by Nelson's argument that § 666 requires an "official act."[9] See also United States v. Jackson, 688 F. App'x 685, 695-96 nn.8, 9 (11th Cir. 2017) (finding defendant waived argument that McDonnell affects McNair or § 666, but observing that, unlike the § 201 McDonnell prosecution, § 666 "does not use the term 'official act'"); United States v. Keen, 676 F.3d 981, 990 (11th Cir. 2012) (explaining that Congress's "ambitious objective" of using § 666 to ferret out "theft, fraud, and undue influence by bribery" from programs accepting federal funds "has led the [Supreme] Court repeatedly to reject statutory constructions aimed at narrowing § 666's scope, in favor of a broad reading") (citations omitted).

A number of courts that have examined this question post- McDonnell have likewise found that McDonnell's analysis does not change the essential elements of

---

[9]Following oral argument, Nelson filed a brief discussing Salinas v. United States, 522 U.S. 52 (1997), in which he essentially argues that Salinas undermines the analysis of McNair, but that argument could have been raised long ago, and the Court therefore cannot address it on coram nobis review. See Mills, 221 F.3d at 1204 (explaining that a coram nobis petitioner must present "sound reasons" for failing to seek relief earlier). In any event, the Court disagrees that McNair's analysis is called into question by Salinas (a decision which pre-dates the Eleventh Circuit's McNair decision by thirteen years).

9

a § 666 bribery prosecution. See, e.g., United States v. Porter, 886 F.3d 562, 565-66 (6th Cir. 2018) (rejecting argument that McDonnell applied to § 666 because its interpretation of the term "official act" was in § 201, "an entirely different statute"); United States v. Boyland, 862 F.3d 279, 291 (2d Cir. 2017), cert. denied, 138 S. Ct. 938 (2018) (explaining that § 666 is "more expansive" than § 201 and that the McDonnell standard does not apply to § 666 prosecutions); United States v. Maggio, 862 F.3d 642, 646 n.8 (8th Cir. 2017) ("McDonnell was about what conduct rises to the level of an 'official act' within the scope of a different bribery statute. . . . McDonnell had nothing to do with § 666 . . ."), cert. denied, 138 S. Ct. 437 (2017), reh'g denied, 138 S. Ct. 732 (2018); United States v. Kilpatrick, No. 10-20403, 2019 WL 1255543, *3 (E.D. Mich. Mar. 19, 2019) (rejecting habeas argument that jury was improperly instructed under McDonnell because McDonnell was "inapplicable" to a § 666 bribery conviction); United States v. Person, ___ F. Supp. 3d ___, 2019 WL 97057, at *12 (S.D.N.Y. Jan. 3, 2019) (explaining that Boyland foreclosed any argument that McDonnell applied to § 666); Dimora v. United States, No. 1:10-cr-387, 2018 WL 5255121, at *9 (N.D. Ohio Oct. 22, 2018) ("The ruling in McDonnell . . . does not reach the crime of bribery concerning programs receiving federal funds under 18 U.S.C. § 666 . . . . Section 666 is more expansive than § 201(a)(3)"); United States v. Ferguson, No. 10-20403, 2018 WL 1071743, at *4 (E.D. Mich. Feb. 27, 2018) ("McDonnell does not apply to 18 U.S.C. § 666, which does not include the term

'official act' or any similar term"); United States v. Gilbert, No. 2:17-cr-419-AKK-TMP, 2018 WL 2095853, at *7 (N.D. Ala. May 4, 2018) (rejecting contention that McDonnell's restrictions on § 201 should apply to a § 666 prosecution because "the Eleventh Circuit has squarely declined to graft Section 201's 'official act' requirement onto Section 666 in McNair, and McNair remains good law").[10]

Even if § 666 did import McDonnell's restrictions on § 201 prosecutions, the Eleventh Circuit rejected Nelson's contention "that his actions did not involve the exercise of his official or customary powers," stating:

> We disagree. For purposes of the honest-services and federal funds bribery statutes, a board member who uses his position of authority to direct or influence someone else in his organization to do something that he could not do himself is nonetheless acting in his official capacity.

Nelson, 712 F.3d at 509-10. The Eleventh Circuit recounted at least four examples

---

[10]Two Second Circuit cases upon which Nelson relies are distinguishable. In United States v. Silver, 864 F.3d 102 (2d Cir. 2017), the defendant was not charged with a § 666 violation, the government's theory underlying the honest services fraud charges was that the defendant engaged in "official acts," and on appeal both parties argued that the McDonnell official acts definition applied to the case. Id. at 111, 116 n.67. Here, by contrast, Nelson's honest services fraud charges were predicated on § 666, not § 201. And in United States v. Skelos, 707 F. App'x 733 (2d Cir. 2017), at the government's request, the jury was charged that the § 666 bribery charge was based on "'official acts,' the definition of which is cabined by the constitutional concerns identified in McDonnell." Id. at 738. Here, the jury instructions as to both Nelson's § 666 charge and the honest services fraud charge did not borrow the "official acts" language from § 201. Instead, they focused on the "transactions or series of transactions" language taken directly from § 666 and approved by McNair. See Jury Instr. Nos. 14 & 16 (Crim. Doc. 333 at 22-24, 26-28).

of Nelson's having taken official actions. Id. at 502-03 (describing Young's testimony that Nelson persuaded the Port to approve a change order for one of Young's company's dredging contracts; Young's testimony that Nelson agreed to help Young's company obtain early release of a portion of its contract price; evidence that Nelson requested that the Port increase the price of a contract with Young's company to account for increased fuel costs; and evidence that Nelson requested that Young's company be paid on particular claims). Thus, the Eleventh Circuit determined Nelson violated § 666 because his unlawful actions were related to his official duties.[11]

Furthermore, the Supreme Court in McDonnell did not entirely foreclose what Nelson refers to as the "access" theory– rather, it held that setting up meetings, talking to officials, and organizing events, was not enough to convict under § 201 "without more."[12] 136 S. Ct. at 2372. But here, the jury found more, as recounted by

---

[11]Nelson takes issue with the Eleventh Circuit's characterization of the facts, saying the Eleventh Circuit was "wrong," but this Court, on coram nobis review, is not free to discount the holding of a superior appellate court.

[12]As the Supreme Court explained:
> Of course, this is not to say that setting up a meeting, hosting an event, or making a phone call is always an innocent act, or is irrelevant, in cases like this one. [Such evidence] could serve as evidence of an agreement to take an official act. A jury could conclude, for example, that the official was attempting to pressure or advise another official on a pending matter. And if the official agreed to exert that pressure or give that advice in exchange for a thing of value, that would be illegal.

McDonnell, 136 S. Ct. at 2371.

12

the Eleventh Circuit. So even if McDonnell applied to § 666, it was still satisfied here. See Spellissy, 710 F. App'x at 395 (affirming dismissal of coram nobis petition in § 201 prosecution where, even if assumed to be fundamental, any error in the jury instruction for failing to comport with McDonnell was harmless because the government's evidence at trial involved conduct that met the McDonnell definition of official act).

Finally, even if the Court found any of Nelson's McDonnell arguments persuasive, it could not grant the petition because Nelson's § 1001 false statement conviction (Count 44) stands independent of the other charges.[13] Indeed, the jury was instructed that each count was to be considered separately. See Jury Instr. No. 24 (Crim. Doc. 333 at 39). Although Nelson argues that the materiality of the false statement would be affected if the other conduct was not illegal, the Court disagrees. A false statement is material under § 1001 if it "is capable of affecting or influencing the exercise of a government function." United States v. Fern, 696 F.2d 1269, 1274 (11th Cir. 1983) (citation and emphasis omitted). Other unlawful conduct is not necessary to commit a § 1001 violation. And the government agency need not rely on the statement; instead, it "must simply have the capacity to impair or pervert" its functioning. United States v. Boffil-Rivera, 607 F.3d 736, 741-42 (11th Cir. 2010); see

---

[13] The government concedes that if the bribery counts are defective, the honest services mail fraud, money laundering, and conspiracy counts are defective too.

also Jury Instr. No. 19 (Crim. Doc. 333 at 33). Here, Nelson was charged and convicted under § 1001 because the jury found beyond a reasonable doubt that he falsely stated to the FBI that Young had loaned him $50,000.[14] See Crim. Doc. 1 at 28, Crim. Doc. 306 at ¶ 37. This false statement had the "capacity to impair or pervert" the FBI's criminal investigation. Thus, Nelson would still stand convicted of the false statement count even if the Court found his convictions on the other counts were due to be vacated.[15] Therefore, Nelson is unable to show prejudice from the denial of the writ. See Campbell v. United States, 538 F.2d 692, 693 (5th Cir. 1976) (rejecting petition that would affect only four of eight counts of conviction).

---

[14]Nelson later told the FBI that the money was payment for providing Young with access and time. Crim Doc. 431 at Tr. 235. Young testified this money was a bribe. Crim. Doc. 430 at Tr. 102, 110, 116.

[15]Contrary to Nelson's contention in his brief and at oral argument that the false statement charges in McDonnell "were found to be defective" because of their relationship to the other charges, in fact, the jury had acquitted McDonnell of the false statement charges, so they were never before the Supreme Court. See United States v. McDonnell, 792 F.3d 478, 493 (4th Cir. 2015) (reversed) (setting out procedural history). Moreover, McDonnell was charged with making false statements under § 1014 (making false statements to a financial institution), not § 1001, as was Nelson, and the elements of those charges are different. Compare United States v. McDonnell, No. 3:14-cr-12, 2014 WL 3545206, at *1 (E.D. Va. Jul. 16, 2014) (discussing elements of § 1014), with United States v. Calhoon, 97 F.3d 518, 523 (11th Cir. 1996) (discussing elements of § 1001).

Accordingly, it is hereby

**ORDERED**:

Petitioner Tony Devaughn Nelson's Petition for Writ of Coram Nobis (Civ. Doc. 1) is dismissed for lack of jurisdiction and, alternatively, is denied. The Clerk shall enter judgment in favor of the United States and against petitioner and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of April, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record
Petitioner